UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLARENCE BIRTHWRIGHT and LARRY FAULKNER,

               Plaintiffs,

-against-

THE CITY OF NEW YORK, SERGEANT JOHN PRENDERGAST, DETECTIVE PATRICE WALLACE, DETECTIVE JOHN MUNIZ, SERGEANT BRENDAN HIGGINS, DETECTIVE ERIC LAYTON, SERGEANT RICK CABAN, DETECTIVE JEANNIE FINUCANE, LIEUTENANT KEVIN CANTWELL, SERGEANT TOMMY O'BRIEN, POLICE OFFICER MIGUEL MENARD, LIEUTENANT KEVIN CANTY,

               Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9·8·05

01 Civ. 3940 (CBM)

**MEMORANDUM OPINION & ORDER**

Motley, J.

# I. BACKGROUND

## A. Introduction

Plaintiffs Clarence Birthwright and Larry Faulkner claim that their residences at 143 West 129th Street, New York, New York 10027, were raided by five (5) to ten (10) police officers in violation of their Fourth Amendment constitutional rights. Plaintiffs have brought claims against the above-named officers and the City of New York on the grounds that the police had no probable cause to search plaintiffs' residences and arrest them, and no reason to suspect wrongdoing.

## B. Procedural History

Clarence Birthwright and Larry Faulkner filed this action on May 9, 2001. On January 31, 2002, the City of New York ("City" or "City of New York") answered the complaint. Plaintiffs filed an Amended Complaint on April 16, 2003, naming Sergeant John Prendergast, Detective Patrice Wallace, Detective John Muniz, Sergeant Brendan Higgins, Detective Eric Layton, Sergeant Rick Caban, Detective Jeannie Finucane, Lieutenant Kevin Cantwell, Sergeant Tommy O'Brien, Police Officer Miguel Menard, and Lieutenant Kevin Canty as additional defendants.

The case was transferred from Judge Batts to the undersigned on May 22, 2003. The City of New York, Sergeant John Prendergast, Detective Patrice Wallace, Detective John Muniz, Sergeant Brendan Higgins, Detective Eric Layton, Sergeant Rick Caban, and Detective Jeannie Finucane filed their Answer to the Amended Complaint on June 11, 2003.

On December 24, 2003, the City of New York, Sergeant John Prendergast, Detective Patrice Wallace, Detective John Muniz, Sergeant Brendan Higgins, Detective Eric Layton, Sergeant Rick Caban, and Detective Jeannie Finucane filed a motion for summary judgment, which is now before the Court.

## C. Facts

At the time of the events at issue, plaintiffs were residents of the premises located at 143 West 129th Street, which plaintiffs maintain is a multi-unit dwelling, and defendants contend is a private home. (Defendant's Local Rule 56.1 Statement ("Def.'s Rule 56.1 Stmt.") ¶¶ 2, 5, 8; Plaintiff's Local Rule 56.1 Opposition Statement ("Pl.'s Rule 56.1 Opp. Stmt.") ¶ 2). The premises at 143 West 129th Street are owned by one Violet Jordan, plaintiff Birthwright's sister. (Def.'s Rule 56.1 Stmt. ¶¶ 1, 4). Birthwright does not pay rent and has resided at 143 West 129th Street for sixty years. (Def.'s Rule 56.1 Stmt. ¶ 7).

143 West 129th Street is by outward appearance a brownstone-style building, but inside it is comprised of units varying in size and type. (See Wallace Dep. at 54-55; July Birthwright Dep. at 15). The building has four stories, comprised of nine units, yet only one mailbox and one doorbell service the premises. (July Birthwright Dep. at 12, 14, 17, 27). The building has two possible entrances, one at the top of a stoop leading to the first floor, and one underneath the stoop leading to the basement. (Id. at 12, 14, 17, 18; Reply Decl. of Katie O'Connor, Exh. V). The basement and first floor are comprised of one unit each, and the second and third floors have three and four units respectively. (July Birthwright Dep. at 15). Inside, each unit is equipped with a lock. (Id. at 12, 14, 17). Six units contain stoves, sinks, and refrigerators, and three units are single room occupancy that do not have kitchen facilities. (Id. at 10-13). Birthwright's apartment, on the first floor, has its own bathroom, and the rest of the building shares two other bathrooms, located in the hallways on the second and third floors. (Id. at 15). Plaintiff Larry Faulkner resides on the second floor. (Id. at 27). Entering the building on either the basement or the first floor, a

person finds herself at once in a room or unit, (Id. at 14, 27), and not a foyer, hallway, or staircase. There are no separate doorbells at 143 West 129th Street, only one mailbox, no intercom system, no name plates, and no apartment numbers indicating multiple residency. (July Birthwright Dep. at 12, 14, 17, 27, 28; Faulkner Dep. at 22, 23). Detective Wallace testified that upon execution of the search warrant, there were different rooms in the building, and that some were locked, and some were not. (Wallace Dep. at 41). On the third floor, which plaintiffs contend has four separate units, Wallace testified that one room had "very little in it, and another room [had] some clothing or something laying all over the place." (Wallace Dep. at 123). Wallace further testified that none of the rooms on the third floor had kitchen facilities, and that it appeared that no one resided on the third floor. Id.

Detective Wallace testified in an Affidavit in Support of Search Warrant that one JD Bubbles was using the "single family dwelling in premises 143 West 129 Street . . . to store and sell . . . marijuana." (Def.'s Rule 56.1 Stmt. Ex. J). Detective Wallace testified in his Affidavit that a confidential informant ("CI") had purchased marijuana at the subject premises from JD Bubbles on two occasions, and observed marijuana within the premises on numerous occasions over an 11 month period preceding these transactions. (Id.). During both purchases, while present on the second floor of the premises, the CI observed JD Bubbles go to another floor and return shortly thereafter with the marijuana. (Id.).

Additionally, Detective Wallace performed a search with the local electric company, Consolidated Edison, in order to ascertain the building's status as a private residence or multi-unit dwelling. (Wallace Dep. at 19). The search turned up one owner as well as only one resident, Violet Jordan. Id.

On June 22, 2000, based on the Affidavit in Support of Search Warrant, Detective Wallace obtained a "no knock" search warrant[1] authorizing the "search of the single family dwelling in premises 143 West 129th Street in the County of New York utilized by JD Bubbles and of the persons of JD Bubbles . . . ." (Def.'s Rule 56.1 Stmt. Exh. I). The warrant was executed on June 28, 2000. (Def.'s Rule 56.1 Stmt. ¶ 12, 15). The search yielded, *inter alia*, $57,708.00, a loaded .45 caliber handgun, a loaded .38 caliber defaced handgun, a .380 caliber handgun, a loaded .32 caliber handgun, a precision assault rifle with an attached clip containing 44 rounds of ammunition, drug paraphernalia, and eighty (80) pounds of marijuana. (Id. ¶¶ 19-22). $16,602.00, metal spoons, a metal cup, E-Wider rolling papers, and a plastic bag of marijuana were recovered from Birthwright's unit.[2] A bag of marijuana was recovered from plaintiff Faulkner's unit. (Pl.'s Rule 56.1 Opp. Stmt. ¶ 26).

---

[1] A no-knock warrant is permitted by statute in New York upon a showing that "the property sought may be easily and quickly destroyed or disposed of." N.Y. CRIM. PROC. LAW § 690.35(4)(b)(i).

[2] Defendants claim that spoon screens and a glass tube of cocaine were also recovered from Birthwright's unit. (Def.'s Rule 56.1 Stmt. ¶¶ 24-25).

3

Plaintiffs were transported along with other residents Kenneth Dickerson, Roan Bailey, and Anthony Campbell to the 28th precinct, and subsequently placed in a holding cell together. (Def.'s Rule 56.1 Stmt. ¶¶ 16, 27). Plaintiffs were later transported to 100 Centre Street, where they were arraigned on June 28, 2000. (Id. ¶ 29). Plaintiffs were charged with criminal possession of marijuana, criminal possession of a weapon, criminal use of drug paraphernalia, and Birthwright was additionally charged with criminal possession of a controlled substance. (Id. ¶¶ 30-31). According to plaintiffs, a grand jury refused to indict them. (Pl.'s Rule 56.1 Opp. Stmt. ¶ 35). Defendants, however, claim that all charges were dismissed. Plaintiffs allege they were released from custody on July 13, 2000, while defendants contend plaintiffs were released July 12, 2000. (Def.'s Rule 56.1 Stmt. ¶ 36; Pl.'s Rule 56.1 Opp. Stmt. ¶ 36).

## II.     DISCUSSION

### A.     Standard on Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith" if it is shown that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323 n. 4, 106 S.Ct. 2548, 2552 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. See Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Scotto Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## B. Personal Jurisdiction

Defendants maintain in their motion for summary judgment that all claims against individual defendants Lieutenant Kevin Cantwell, Sergeant Tommy O'Brien, Lieutenant Kevin Canty, and Police Officer Miguel Menard should be dismissed due to lack of personal jurisdiction.

Valid service of process is a prerequisite to this Court's exercise of personal jurisdiction over defendants. Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987). Rule 4(e) of the Federal Rules of Civil Procedure governs service of process upon individuals in federal actions. FED. R. CIV. P. 4(e). Rule 4(e)(1) provides that an individual may be served pursuant to the law of the forum state. FED. R. CIV. P. 4(e)(1). § 308 of the New York Civil Practice Law and Rules ("CPLR") governs service upon a natural person in New York. § 308 provides, in pertinent part:

> Personal service upon a natural person shall be made . . . by delivering the summons within the state to the person to be served; or . . . by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence . . . , such delivery and mailing to be effected within twenty days of each other . . . in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

N.Y. C.P.L.R. § 308 (Consol. 2005). Plaintiffs have failed to meet these requirements with respect to the aforementioned individual officers. The record does not contain any proof that defendants Lieutenant Kevin Cantwell, Sergeant Tommy O'Brien, Lieutenant Kevin Canty, and Officer Miguel Menard were ever served in this action. Plaintiffs do not address defendants' contention that service of process was never effected upon defendants Cantwell, O'Brien, Canty, and Menard. Further, plaintiffs did not seek the aid of the court to effect a form of substituted service upon these defendants pursuant to § 308(5), nor did they claim that service was impracticable under the preceding paragraphs of § 308. N.Y. C.P.L.R. § 308 (Consol. 2005). Personal jurisdiction, a prerequisite to this court's power to render a binding judgment against a party, is not present as to defendants Cantwell, O'Brien, Canty, and Menard, and all claims against them will therefore be dismissed.

## C. Execution of the warrant

Defendants first argue on summary judgment that no material issue of fact exists as to the alleged violation of plaintiffs' Fourth Amendment right to be secure in their homes. Defendants claim that Detective Wallace was issued a valid search warrant by a neutral magistrate and that

defendants' conduct in executing the warrant was reasonable. Plaintiffs argue that even if the warrant was properly obtained and defendants reasonably believed that 143 West 129th Street was a single-family dwelling, defendants should have realized upon entering the building that it was a multi-unit dwelling, and therefore that the warrant was invalid as to its execution, and the search, at that point, should have been aborted.

Under the Warrant Clause of the Fourth Amendment, warrants that are not based on probable cause and that do not "particularly describe the place to be searched and the persons or things to be seized" are prohibited. U.S. CONST. amend. IV. The purpose of the particularity requirement is to prevent general searches. Maryland v. Garrison, 480 U.S. 79, 84 (1987). Permitting the search of specific areas and things for which there is probable cause to search protects against "wide-ranging exploratory searches the Framers intended to prohibit." Id. Where officers discover contraband before realizing they are in the wrong apartment, the Supreme Court has held that the officers are "required to discontinue the search of respondent's apartment as soon as they discover[] that . . . they might be in a unit erroneously included within the terms of the warrant." Id. at 87. The "validity of the search . . . depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." Id. at 87-88. In Lewis v. City of Mount Vernon, 984 F. Supp. 748 (S.D.N.Y. 1997), this court elaborated that "[t]here is no bright line rule . . . as to what discrepancies between the premises identified in the warrant and the premises encountered by the officers are significant enough to alert the officers that the warrant identifies the wrong location and to require their immediate departure." Lewis, 984 F. Supp. at 756. "This problem arises because information that may be sufficient to establish probable cause may nonetheless not be accurate in all respects." Id. There, citing the facts that the officers vacated the premises shortly after the conclusion of the search, and that they did not unreasonably prolong the search after they determined they were in the wrong apartment, the court held that "there is no evidence that the officers unreasonably continued to search after they knew they were in the wrong apartment." Id.

In the instant case, defendants allege that there never came a point at which the officers should have realized they were in a multi-unit dwelling. The search was not discontinued because the officers did not discover they were in the wrong unit or units. Plaintiffs counter that there existed a point at which it should have become apparent to the officers who conducted the search that they were in a multi-unit dwelling. Plaintiffs do not argue that the officers improperly continued the search once they discovered they were in the wrong apartment; they argue that the officers first should have discovered they were in the wrong apartment, and upon that discovery that the officers would have been obliged to discontinue the search.

Even assuming, as the court must, the truth of plaintiffs' contention that 143 West 129th Street is a multi-unit dwelling, the Court finds that reasonable jurors could not disagree as to whether the execution of the search was objectively reasonable. Here, as in Garrison, the objective facts available to the officers at the time of the execution of the search suggested no distinction between the residence of JD Bubbles and the premises of 143 West 129th Street. See Garrison, 480 U.S. at 88. There is an abundance of evidence in the record that supports the

6

officers' conclusion that their search of the entire premises at 143 West 129th Street was not beyond the scope of the warrant and therefore was not in violation of plaintiffs' constitutional rights. Detective Wallace testified that the CI had purchased marijuana from JD Bubbles at 143 West 129th Street on two occasions. (Wallace Dep. at 16; Def.'s Rule 56.1 Stmt. Ex. J). On each occasion, the CI went to the second floor of the premises, which plaintiffs testified is Larry Faulkner's apartment, and observed JD Bubbles go to another floor in the building and return with marijuana. (Def.'s Rule 56.1 Stmt. Ex. J). The CI further indicated to Detective Wallace, based on his observations while inside the premises at 143 West 129th Street purchasing marijuana and his observations on numerous occasions in the 11 preceding months, that the building was a private house. (Wallace Dep. at 18; Def.'s Rule 56.1 Stmt. Ex. J). Detective Wallace also performed a search with the local electric company, Consolidated Edison, in order to ascertain the building's status as a private residence or multi-unit dwelling. (Wallace Dep. at 19). The search turned up one owner as well as only one resident, Violet Jordan. Id.

In United States v. Maneti, 781 F. Supp. 169, 175 (S.D.N.Y. 1991), the court upheld a warrant issued for a home containing two apartments, which the officers believed was a single-family home. There the court upheld the warrant even though the officers failed to perform a search through the local electric company that would have revealed that there were two apartments on the premises. Id. at 175. The court stated that:

> the dwelling in question displayed virtually no outward signs of multiple occupancy. The dwelling does not have separate visible doorbells, mailboxes, speaking tubes, name plates, or apartment numbers to indicate multiple residency. The few outward signs of multiple residency that [it] does possess are difficult to see or could be easily overlooked.

Id. at 181. Similarly, in the instant case, there are no separate doorbells, only one mailbox, one entrance, no intercom system, no name plates, and no apartment numbers indicating multiple residency. (July Birthwright Dep. at 12, 14, 17, 27; Faulkner Dep. at 23); See Maneti at 173. Unlike in Maneti, where the outward signs of multiple residency were difficult to see, they do not exist at 143 West 129th Street. Indeed, there are few, if any, indicators of multiple residency even *inside* 143 West 129th Street. Detective Wallace testified that upon execution of the search warrant, there were different rooms in the building, but that some were locked, and some were not. (Wallace Dep. at 41). The configuration of 143 West 129th Street does not suggest that it is a multi-unit dwelling. One enters the premises on either the first floor or the basement floor, which is comprised entirely of plaintiff Birthwright's or George Keller's unit. (July Birthwright Dep. at 27). On the third floor, which plaintiffs contend has four separate units, Wallace testified that one room had "very little in it, and another room [had] some clothing or something laying all over the place." (Wallace Dep. at 123). This testimony has not been controverted by the plaintiffs and does not suggest 143 West 129th Street is a multi-unit dwelling. Wallace further testified that none of the rooms on the third floor had kitchen facilities, and that it appeared that no one resided on the third floor. Id. This testimony has likewise not been opposed and also does not suggest that 143 West 129th Street is a multi-unit dwelling.

7

Plaintiffs proffer two pieces of evidence in support of their argument that reasonable jurors could differ as to whether the officers should have realized they were in a multi-unit dwelling and therefore terminated their search of 143 West 129th Street. First, plaintiffs claim "there are rooming houses in plaintiffs' neighborhood that appear, from the outside, to be single-family dwellings." (Pl.'s Mem. Opp. Summ. J. at 7). This fact does not shed light on the question of whether the officers should have realized, considering the objective facts before them upon execution of the search warrant in question, that they were in a multi-unit dwelling. Second, plaintiffs claim that "upon entering 143 W. 129th Street, [defendants] encountered numerous locked doors." (Pl.'s Mem. Opp. Summ. J. at 7). Plaintiffs cite the Deposition of Detective Patrice Wallace for this assertion. The relevant exchange is as follows:

> Q: Did you learn there were different locked apartments or rooms in that building?
>
> A: There were different rooms in that building, yes.
>
> Q: Were those rooms locked?
>
> A: Some were, some were not.

(Wallace Dep. at 41). However much "some" may be said to denote "numerous," this element, taken alone, and especially when set against the abundance of evidence to the contrary, does not undermine the reasonableness of the officers' actions in this case.

This court finds that reasonable jurors could not disagree as to whether the execution of the search was objectively reasonable. Therefore, defendant's motion for summary judgment as to plaintiff's claim of unlawful entry is granted.

### D. False Arrest

A § 1983 claim for false arrest derives from the right to be free from unreasonable search and seizure, including the right to be free from arrest absent probable cause. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). The law of the forum state controls the elements of a § 1983 false arrest claim. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Under New York law, a plaintiff must show that (1) the defendant intentionally confined the plaintiff, (2) the plaintiff was aware of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not justified or privileged. Hall v. City of White Plains, 185 F. Supp. 2d 293, 299 (S.D.N.Y. 2002).

Defendants maintain that the defendant officers in this case had probable cause to arrest plaintiffs, and that therefore plaintiffs' false arrest claim must fail.

"There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Singer, 63 F.3d at 118 (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir.

8

1994). Accordingly, probable cause is a complete defense to an action for false arrest. Jocks v. Tavernier, 316 F.3d 128, 134-35 (2d Cir. 2003). Probable cause is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (quoting Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)). The focus with regard to probable cause is not on certitude, but on the likelihood of criminal activity. See Illinois v. Gates, 462 U.S. 213, 235, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); Spinelli v. United States, 393 U.S. 410, 419, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). The establishment of probable cause requires a fact-based determination that considers the "totality of the circumstances." Gates, 462 U.S. at 232 & n.7. Where there is no dispute as to the knowledge of the officers, whether probable cause existed may be determined as a matter of law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Defendants claim that probable cause to arrest was established here because plaintiffs "were found to be in possession of a controlled substance, weapons, and drug paraphernalia . . . ." (Def.'s Mem. Supp. Summ. J. at 9). The undisputed facts show that the search of the premises at 143 West 129th Street yielded approximately 80 pounds of marijuana, $60,000 in cash, five guns, ammunition, and additional drugs and paraphernalia. Marijuana, metal spoons, a metal cup, E-Wider rolling papers, and $16,602 in cash were recovered from plaintiff Birthwright's room, and marijuana was recovered from plaintiff Faulkner's room. Applying the standards set forth above, it is clear that the defendant officers possessed probable cause to arrest plaintiffs.

Plaintiffs' contention that the quantities of marijuana discovered in plaintiffs' rooms could be classified as mere violations are irrelevant to the determination of probable cause. "The evidence needed to establish probable cause to justify an arrest does not have to be such as to warrant a conviction." People v. Miner, 42 N.Y.2d 937, 938 (1977). Rather, the evidence must be sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested. Michigan v. De Fillippo, 443 U.S. 31 (1979). "The probable cause determination is an objective one that pays no heed to the subjective thoughts of the officers effectuating arrest . . . or, by extension, to the subjective post-arrest evaluation of the lawyers defending the validity of the arrests." Davis v. City of New York, 2005 U.S. Dist. LEXIS 10323 at *20 n.9 (S.D.N.Y. May 25, 2005) (citing Devenpeck v. Alford, 160 L. Ed. 2d 537, 125 S. Ct. 588, 593-94 (2004)). Upon discovering the marijuana, paraphernalia, and a large amount of cash in plaintiffs' rooms, a person of reasonable caution could reasonably believe that an offense had been committed. Plaintiffs' argument concerning constructive possession of the contraband located in other parts of the premises is therefore moot. Accordingly, defendants' motion for summary judgment with respect to plaintiffs' claim of false arrest is granted.

### E. Malicious Prosecution

To sustain a § 1983 claim based on malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally

9

cognizable deprivation of liberty. Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995). To make out a claim for malicious prosecution under New York State law, a plaintiff must prove: "1) the initiation or continuation of a criminal proceeding against plaintiff; 2) termination of the proceeding in plaintiff's favor; 3) lack of probable cause for commencing the proceeding; and 4) actual malice as a motivation for defendant's actions." Russell v. Smith, 68 F.3d 33, 36 (2nd Cir.1995). As with a false arrest claim, the existence of probable cause entitles the defendants to summary judgment. See Broughton v. State, 37 N.Y.2d 451, 456-57, 373 N.Y.S.2d 87, 92-93, 335 N.E.2d 310 (1975), cert denied sub nom, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

Plaintiffs satisfy the first prong, as a prosecution was initiated against them. See Mejia v. City of New York, 119 F.Supp.2d 232, 254 (E.D.N.Y. 2000) (in the case of a warrantless arrest, the prosecution commences at the time of the arraignment or grand jury indictment). Although the grand jury here decided not to indict plaintiffs, they were arrested and arraigned on June 28, 2000. (Def.'s Rule 56.1 Stmt. ¶ 29).

Plaintiffs also satisfy the second prong because of the grand jury's refusal to indict plaintiffs. RESTATEMENT (SECOND) OF TORTS § 659 ("Criminal proceedings are terminated in favor of the accused by . . . (b) the refusal of a grand jury to indict . . . ."). Defendants assert that because the circumstances of the outcome of the criminal proceeding do not "impl[y] a lack of grounds for the prosecution," plaintiffs cannot show that the proceeding terminated in their favor. (Def.'s Mem. Supp. Summ J. at 14). "New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence. Rather, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence." Rothstein v. Carriere, 373 F.3d 275, 286 (2d Cir. 2004) (citing Smith-Hunter v. Harvey, 95 N.Y.2d 191, 198-99 (2000); Cantalino v. Danner, 96 N.Y.2d 391, 396, 754 N.E.2d 164, 729 N.Y.S.2d 405 (2001)). The termination of the proceeding against plaintiffs in this case was not inconsistent with innocence. The grand jury decided not to indict plaintiffs. Further, the outcome of the proceedings was neither the result of a compromise to which the accused agreed, nor an act of mercy requested or accepted by the accused, both of which are situations in this district that are not considered terminations in favor of the accused for purposes of a malicious prosecution claim. Almonte v. Florio, 2004 U.S. Dist. LEXIS 335, 25-26 (S.D.N.Y. Jan. 13, 2004) (citing Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir. 1999). The proceedings terminated in plaintiffs' favor.

With respect to the third prong, for a malicious prosecution claim to stand there must be "some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest." McDermott v. City of New York, 1995 WL 347041, *5 (E.D.N.Y. May 30, 1995); Feinburg v. Saks & Co., 56 N.Y.2d 206, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (1982). See also Lowth v. Town of Cheektowaga, 82 F.3d 563, 571-72 (2d Cir.1996). Although plaintiffs

maintain that because "defendants fabricated evidence . . . summary judgment must be denied" (Pl.'s Mem. Opp. Summ J. at 14), plaintiffs have not provided "any significant probative evidence tending to support" this allegation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citing First Nat'l Bank v. Cities Service Co., 391 U.S. 253, 290 (1968)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Plaintiffs have introduced no evidence to support their allegation that defendants fabricated evidence. Because there was probable cause to arrest plaintiffs, and plaintiffs have not introduced evidence to suggest that the defendants had exculpatory information available to them between the time of their arrest and arraignment, defendants had probable cause to prosecute plaintiffs.

Because the existence of probable cause to prosecute entitles defendants to summary judgment on this issue, see Broughton, 37 N.Y.2d at 456-57, the court need not address malice, the fourth prong of a malicious prosecution claim. Accordingly, defendants' motion for summary judgment as to malicious prosecution is granted.

### F.     Qualified Immunity

The individual officer defendants argue that they are entitled to qualified immunity with respect to the alleged false arrests.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (citing Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985)). The privilege is "effectively lost if a case is erroneously permitted to go to trial." Id. It is therefore important to resolve the issue at the earliest possible stage of the litigation. Saucier, 533 U.S. at 200-01 (citing Hunter v. Bryant, 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (per curiam)). In order to determine whether an official is entitled to qualified immunity, the court must conduct a two-part analysis. Saucier, 533 U.S. at 201. The threshold question is whether the facts as alleged by the plaintiffs show that the officers' conduct violated a constitutional right. Id. If the court determines the alleged conduct does not violate a constitutional right, the analysis ends. Id. If the court determines plaintiffs' alleged facts do show a violation of a constitutional right, the court must inquire as to whether the right was clearly established. Id. However, "Even where the right was clearly established at the time of the infringement, a public official is entitled to qualified immunity if he 'reasonably believed that his actions did not violate plaintiff's rights . . . even if that belief was mistaken.'" Lewis v. United States, 2005 U.S. Dist. LEXIS 4223, 11-12 (S.D.N.Y. Mar. 14, 2005) (citing Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir. 2002); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)). "[T]he existence of probable cause affords an officer qualified immunity from liability, as it is an absolute defense to claims of false arrest, false imprisonment, or malicious

11

prosecution." Lewis, 2005 U.S. Dist. LEXIS at *11-12 (citing Jackson v. City of New York, 2004 U.S. Dist. LEXIS 7223, No. 00 Civ. 1206, 2004 WL 895609, at *4 (S.D.N.Y. Apr. 26, 2004)). Assuming the facts as alleged constitute a violation of plaintiffs' constitutional rights and that those rights were clearly established at the time of the arrests, the court has already determined that probable cause existed for the plaintiffs' arrest. Therefore, the defendant officers enjoyed qualified immunity.

### G. Personal Involvement of Individual Defendants

Defendants argue that plaintiffs have not sufficiently alleged personal involvement on behalf of individual defendants Patrice Wallace, John Muniz, John Prendergast, Brendan Higgins, Eric Layton, Rick Caban, Jeannie Finucane, Kevin Cantwell, Tommy O'Brien, Miguel Menard, and Kevin Canty, and that therefore, the complaint as against them must be dismissed.

A finding of personal involvement of the individual defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (citations omitted). Plaintiffs allege in their Amended Complaint that each of the above-named officers "failed to investigate the circumstances surrounding plaintiffs' illegal searches and arrests, and failed to advise prosecutors and there was no evidence pointing to plaintiffs as having committed any crime which would justify the searches and arrests." (Pl.'s Am. Compl. ¶¶ 31-41). While this broad allegation, alone, would not likely support a finding of personal involvement, defendants admit in their Memorandum that "each of [the named officers'] respective roles in the execution of the search warrant is listed on the tactical plan." (Def.'s Mem. Supp. Summ. J. at 18 n.6). The plan to which defendants refer, entitled "Search Warrant Plan Pre-Execution," lists under the column "Personnel," each of the above-named individual defendant officers and their respective assignments in the search that took place six days later, on June 28, 2000. (Def.'s Rule 56.1 Stmt. Exh. N). There is nothing in the record that indicates that these defendants participated in the search other than in the manner set forth in the plan. The court therefore finds that the above-named defendants were personally involved in the searches and arrests at issue. However, because the court finds that defendants possessed probable cause to arrest and prosecute, and that the warrant was properly executed, the question of whether these particular individual defendants were found to have been personally involved is rendered moot.

### H. City of New York

Defendant City of New York argues that plaintiffs have not proffered evidence showing that a custom or policy of the City caused the alleged deprivation of plaintiffs' civil rights.

It is well settled that in a 42 U.S.C. § 1983 suit a municipality may not be held liable on a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (U.S. 1978).

12

However, a municipality may be liable for damages under §1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Monell, 436 U.S. at 694. The plaintiff alleging constitutional harm attributable to a municipality under § 1983 "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (U.S. 1997) (italics in original).

There are four situations in which a municipality can be held liable under 42 U.S.C. § 1983: (1) an officially promulgated policy endorsed or ordered by the municipality, Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); (2) a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it, City of St. Louis v. Praprotnik, 485 U.S. 112, 130, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); (3) actions taken or decisions made by the municipal employee who, as a matter of state law, is responsible for establishing municipal policies with respect to the area in which the action is taken, McMillian v. Monroe County, 520 U.S. 781, 117 S. Ct. 1734, 1736, 138 L. Ed. 2d 1 (1997); Praprotnik, 485 U.S. at 129-30, 108 S. Ct. 915; Pembaur, 475 U.S. at 480-83, 106 S. Ct. 1292; or (4) where the failure of the municipality to train its employees rises to the level of deliberate indifference to the constitutional rights of others, City of Canton v. Harris, 489 U.S. 378, 385, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989); Walker v. City of New York, 974 F.2d at 297.

Plaintiffs here have put forth no evidence establishing liability under any of the above theories. Plaintiffs have presented no evidence demonstrating that the City of New York employed a custom or policy inflicting constitutional injury, that any action was taken by a municipal employee responsible for establishing such policies, or that the City of New York failed to train its employees. Accordingly, plaintiffs' claim against defendant City of New York must fail.

## I. Intentional Infliction of Emotional Distress

Defendants argue that plaintiffs have failed to state a claim for intentional infliction of emotional distress.

The common law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 558, 373 N.E.2d 1215, 402 N.Y.S.2d 991 (1978)). The conduct must also be intentionally directed at the plaintiff

13

and lack any reasonable justification. Id.

Plaintiffs allege that, "The actions of the defendants in arresting the plaintiffs who they knew or should have known were not guilty of a crime, were outrageous and beyond any norms acceptable to society." (Pl.'s Am. Compl. ¶ 57). Given the court's finding that plaintiffs' arrests were lawful, this claim cannot stand, for a lawful arrest is a bar to a claim for intentional infliction of emotional distress. Sepulveda v. City of New York, 2003 U.S. Dist. LEXIS 12289 (S.D.N.Y. July 17, 2003) (citing Csoka v. County of Suffolk, 85 F. Supp. 2d 117, 123 (E.D.N.Y. 2000). Furthermore, plaintiffs have not produced any evidence that they suffered severe emotional distress. Therefore, summary judgment must be granted to defendants on this claim.

### J. Negligence

Plaintiffs here claim that defendants "acted negligently, carelessly and recklessly in arresting an prosecuting the plaintiffs." (Am. Compl. ¶ 61). Defendants contend that plaintiffs' negligence claim cannot be maintained. This general claim of negligence must be dismissed because "'where the negligence alleged is based upon an arrest, a plaintiff must resort to the traditional remedies of false imprisonment and malicious prosecution and cannot recover under the broader principles of negligence.'" Cea v. Ulster County, 309 F. Supp. 2d 321, 329 (S.D.N.Y. 2004) (quoting Pawlicki v. City of Ithaca, 993 F. Supp. 140, 143 (N.D.N.Y. 1998)).

### K. Negligent Retention and Hiring

Finally, defendants claim that plaintiffs cannot establish a prima facie case for negligent hiring and negligent retention. Liability under this cause of action attaches when a plaintiff shows, along with the standard elements of negligence, "(1) that the tortfeasor and the defendant were in an employee-employer relationship . . . , (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence . . . , and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (quoting Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2d Dep't 1997); citing D'Amico v. Christie, 71 N.Y.2d 76 518 N.E.2d 896, 901-02 (1987)). Plaintiffs proffer no evidence that defendant City of New York knew or should have known of a propensity to commit injury on the part of any of the individual defendants, nor that the individual defendants were retained in spite of this knowledge. Therefore, plaintiffs claim of negligent retention and negligent hiring cannot withstand summary judgment.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. The clerk is directed to enter judgment for the defendant and remove this case from the court's active docket.

SO ORDERED.

Dated: September 8, 2005
New York, New York

_____
CONSTANCE BAKER MOTLEY
United States District Judge

15